## Hubbard *v.* Bellew and others.

*(Circuit Court, W. D. Wisconsin. ———, 1880.)*

1. JURISDICTION—IDENTITY OF CONTROVERSY.—A suit for the strict foreclosure of a contract relating to real estate, *held*, under the circumstances of this case, to involve a different controversy from a suit to foreclose certain liens upon a part of such property.

2. SAME—STATE AND FEDERAL COURT.—In such case the institution of the suit to foreclose the contract in a state court would not subsequently deprive a federal court of jurisdiction of a suit to foreclose the liens upon a part of the property.

Petition to Dismiss Case.

*J. A. Anderson* and *Vilas & Bryant*, for complainant.

*Sloan, Stevens & Morris*, for defendant B. J. Stevens.

BUNN, D. J.   This action is brought by Stephen Hubbard, residing in Texas, against Patrick Bellew, John J. Marsh, and a very large number of other defendants, residing in New York and other states, to foreclose an equitable lien upon land in St. Croix county, in this state, belonging to certain of the defendants.

This motion, founded upon the petition of defendants, is made for an order dismissing the suit, or staying proceedings therein until another suit brought by certain of the defendants against the plaintiff, relating to the same land, can be determined in the state court.   The facts are substantially as follows: John J. Marsh and certain other of the defendants, residing in different states, in 1875 were the owners in severalty of pine lands lying in northern Wisconsin, and employed one Augustus L. Smith, residing at Appleton, as their agent, to make sales of the lands, and of the timber without the lands, at such prices as he deemed best for his employers. In August, 1875, Smith, on behalf of said defendants, made a written contract with the defendant Patrick Bellew for the sale of a quantity of land in St. Croix county.   By its terms Bellew was to build and maintain a steam saw-mill, worth $9,000, on one of the forties of land to be selected by him, and the title to that forty was to be conveyed to Bellew in fee. Bellew was to have the right to make a first mortgage of the mill and 40 acres, in the sum of $6,500 to a third party, to raise money to build and equip the mill.   After the first mortgage was given Bellew was to execute a second mortgage of the mill forty, to the owners of the land sold, to secure the purchase money.   In consideration of the building and maintaining of the mill the owners of the land agreed to sell him certain pine from certain other lands therein described. Title to the lands was to be conveyed in fee to Bellew as fast as paid for.

Bellew went on and built the mill, and for that purpose borrowed $6,500 of Hubbard, as provided in the contract.   The agreement for the advance of this money was made before the written agreement for the building of the mill and the sale of the lands; and, it is alleged, was known to the parties to the

last-named contract at the time of its execution, and that the terms of the written contract above set forth were made and inserted therein in view of the agreement between Bellew and Hubbard for the loan of the money, and that the plaintiff, Hubbard, is the outside or third party referred to in the written contract as the one who was to advance the money and take the first mortgage.

By parol agreement between the parties to the written contract, subsequently made, it was agreed that the forty selected by Bellew for the mill site might be one described in the contract, upon which Bellew was to cut the timber merely, but he was to have the title conveyed to him just the same in consideration of building the mill. This change was made without the knowledge of Hubbard.

It is also alleged that, with the knowledge of defendants, the plaintiff made further advances of money to Bellew upon the same terms, of having a first mortgage upon the mill, amounting, with the $6,500 already advanced, to $10,000.

Afterwards, in February, 1876, to secure these advances, Bellew and wife executed a deed to the plaintiff of the mill forty, and the deed was recorded. The deed was absolute on its face, but intended as a mortgage to secure the advances made to Bellew, and for which a first mortgage was to be given.

The complaint further shows that no deed of the mill forty was ever given to Bellew, and that Bellew, with the knowledge and approbation of defendants, colluded with the agent Smith, in not making a deed of the mill forty, in order to prevent the title enuring to the benefit of Hubbard, under his conveyance from Bellew, and to give the first lien to the defendants.

In April, 1877, the defendants, who were parties to the contract for building the mill and the sale of the land, brought an action in the circuit court of St. Croix county against Bellew alone, he having failed to pay for the land as agreed for, a strict foreclosure of the contract. The case was tried in that court in January, 1878, and a judgment rendered for the plaintiffs. An appeal was taken by Bellew to the supreme

court of Wisconsin, and the judgment affirmed at the August term, 1878, and a remitter filed in the circuit court in November, 1878, and final judgment rendered thereon in May, 1879.

The present suit was commenced by Hubbard in this court, and the bill filed on March 7, 1879, to enforce his lien against the mill property for the advances so made by him. On May 27, 1880, the defendants, John J. Marsh and others, owners of the land, began an action in the circuit court of St. Croix county, making Hubbard, the complainant in this case, and three other persons, as subsequent encumbrancers of the mill forty under Bellew, defendants, to foreclose their liens upon the property, and to extend the decree against them formerly rendered in the same court in the suit for strict foreclosure against Bellew.

And the question is, provided the controversies are the same, which court first obtained jurisdiction of the subject-matter of the controversy? for, if the state court first obtained jurisdiction of the property, and the subject-matter of the controversy, and the controversies are the same, this court will stay the proceedings here until the case pending in the state court can be determined. And it is contended by the defendants' counsel that the state court did, by virtue of the suit brought in 1877, obtain such jurisdiction, and that the suit brought in May, 1880, 14 months after the suit in this court was begun, is but a continuation of the first suit. I am unable to concur in this view.

Hubbard's claim, if sound, is not derived solely from Bellew, as the second party to the contract of sale, and subject to the defendants' title, but is paramount in equity, not only to Bellew's interest under the contract, but to the defendants' title, and is equivalent to a first mortgage lien upon the mill property from the defendants themselves. It constitutes the foundation for an affirmative cause of action, demanding and entitling the defendant to affirmative relief. It is founded partly on the written contract, and partly upon independent facts. Nevertheless, it may be true, that, by making him a

defendant in the foreclosure suit on the contract with Bellew, he may have been compelled, in order to protect his rights in the premises, to have filed a cross-bill for the enforcement of his lien. But, not being made a party to that suit, he is in no way precluded by the judgment, and being a non-resident he had the constitutional right to bring his action to foreclose his lien in this court, free from any danger of having his case dismissed, or the proceedings stayed, on account of an action involving the same controversy which might be subsequently brought in a court of concurrent jurisdiction.

The case brought by the defendants in the state court in 1880 can scarcely be considered as a continuation of the former suit. The defendants are wholly different. In the former suit Bellew was sole defendant. In this Hubbard, with three subsequent encumbrancers, and Bellew are the defendants. The purpose of the suit is also different, though it respects a small parcel of the same land described in the contract which the former suit was brought to foreclose. The former suit was for a specific performance of the contract, and a strict foreclosure of Bellew's right under it, on account of a failure on his part to perform its covenants; the latter, though professedly to foreclose Hubbard's rights under Bellew, was to extend the decree against Bellew to Hubbard. The effect will be to raise a controversy of a very different nature, and which could only be properly presented by a cross-bill, filed by Hubbard, setting up his mortgage claim against the defendants upon one forty of the land.

Such a claim as Hubbard makes in the case could not properly be litigated in a suit on the contract, the purpose of which was to compel a specific performance by Bellew, or, upon default thereof, to foreclose his interest under the contract, and the interest of all others holding under him and subject to the defendants' title.

Clearly, I think, on the facts presented, the latter suit is not a continuation of the former, in any such sense as would, under the rule of comity observed between the state and federal courts when having concurrent jurisdiction, draw to it the exclusive jurisdiction of the controversy.

On the contrary, I think, under the well-settled rule, this court, by virtue of this suit, obtained a preference of jurisdiction.

The motion is dismissed.